UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Woodland Creek Manor Homes Association, Inc.,

    Plaintiff,

v.

AmGUARD Insurance Company,

    Defendant.

File No. 20-cv-01833 (ECT/ECW)

**OPINION AND ORDER**

---

Justice Ericson Lindell and Matthew S. Greenstein, Greenstein Sellers PLLC, Minneapolis, MN, for Plaintiff Woodland Creek Manor Homes Association, Inc.

Tony R. Krall and Laura E. Kuipers, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Defendant AmGUARD Insurance Company.

---

    Plaintiff Woodland Creek owns a 138-unit property in Maple Grove, Minnesota that suffered extensive hail damage in August 2019. Woodland Creek and its then-property insurer, Defendant AmGUARD, agree that the storm damage is a covered loss. They disagree regarding three issues relevant to determining how much AmGUARD owes under its policy and Minnesota law. The first of these concerns whether the replacement-cost value of Woodland Creek's loss should be measured when the storm happened or later, either when repairs were made or, with respect to unrepaired items, when an appraisal of the loss occurred. The other two issues concern how to determine the right amount of pre-appraisal-award interest. The Parties seek resolution of these issues through competing motions for partial summary judgment. To summarize, I conclude (1) that the loss's

replacement-cost value should be measured either when repairs were made or at appraisal (and not when the loss occurred); (2) that Woodland Creek is not entitled to pre-award interest on amounts AmGUARD paid before the appraisal; and (3) that Woodland Creek may recover pre-award interest on the appraisal panel's replacement-cost-value award only after Woodland Creek has completed repairs included within that award.

I

The storm that caused the damage occurred August 5, 2019, and Woodland Creek notified AmGUARD of the loss and its claim the next day, August 6. Lindell Decl. Ex. 2 [ECF No. 50 at 21]; *id.*, Ex. 3 [ECF No. 50 at 28].[1] AmGUARD agreed that the loss was covered. *Id.*, Ex. 2 [ECF No. 50 at 11].

The policy obligated AmGUARD to pay the value of lost or damaged property; pay the cost of repairing or replacing the lost or damaged property; take all or any part of the property at an agreed or appraised value; or repair, rebuild, or replace the property with other property of like kind and quality. *See* Suppl. Kuipers Decl. Ex. B ("Policy") [ECF No. 42-2 at 2] (quotations omitted). AmGUARD evidently chose the last option. Compl. [ECF No. 1-1] ¶ 16; Answer [ECF No. 4] ¶ 7.

After applying a $607,200 deductible, AmGUARD issued two payments to Woodland Creek—the first on November 14, 2019, for $1,132,200, and the second on March 23, 2020, for $1,792,000. Def.'s Mem. Supp. [ECF No. 41] at 2 & n.1; Lindell Decl. Ex. 4 [ECF No. 50 at 29].

---

[1] Page citations are to the ECF pagination, not the cited document's original pagination.

Unable to agree with AmGUARD on the amount of the loss, Woodland Creek brought this lawsuit in August 2020, originally in Minnesota State District Court, Hennepin County. Not. of Removal [ECF No. 1] ¶ 1. AmGUARD timely removed the case on the basis of diversity jurisdiction, *id.* ¶¶ 2–5, and roughly four months later filed a motion to compel an appraisal [ECF No. 13].

AmGUARD's motion to compel an appraisal was granted, and, in accordance with the policy's appraisal provisions, Kuipers Decl. Ex. 1 [ECF No. 16-1 at 2], an appraisal occurred in May 2021, Suppl. Kuipers Decl. Ex. A [ECF No. 42-1 at 2]. The appraisal panel determined the actual cash value (or "ACV") of the repair costs to be $2,452,181.85. *Id.* at 5. The panel identified two replacement cost value (or "RCV") awards, one using 2019 pricing for all repairs, whether completed in 2019 or uncompleted at the time of the appraisal, in the amount of $3,272,777.50, and the other using 2019 pricing for all completed repairs and 2021 pricing for all uncompleted repairs in the amount of $3,622,695.04. *Id.* at 5, 7; *see also* Def.'s Mem. Supp. at 4; Pl.'s Mem. Opp'n [ECF No. 53] at 2.[2] The panel's award did not account for the deductible or AmGUARD's prior payments. Def.'s Mem. Supp. at 3.

---

[2] For an explanation of the ordinary meaning of "ACV" and "RCV," see *Selective Insurance Co. of South Carolina v. Sela*, 455 F. Supp. 3d 841, 844 (D. Minn. 2020), and *Creekview of Hugo Association, Inc. v. Owners Insurance Co.*, 386 F. Supp. 3d 1059, 1061–62 (D. Minn. 2019). These ordinary meanings are consistent with the terms as used in the AmGUARD policy.

II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The Parties agree that Minnesota law applies. Minnesota Supreme Court decisions are therefore binding, *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006), and in the absence of Minnesota Supreme Court authority, it will be necessary "to predict how the state's highest court would resolve that issue[,]" *id.* (quoting *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1007 (8th Cir. 2006)). When the decisions of a state's intermediate appellate court present "the best evidence of what state law is," those decisions constitute persuasive authority that will be followed. *Id.*

A

The first question is whether the replacement-cost value of Woodland Creek's loss should be determined based on data showing costs (1) in 2019 when the storm happened or (2) when repairs were actually made or, for those items that have not been repaired, in 2021 when the appraisal occurred. AmGUARD argues for the first option. Def.'s Mem. Supp. at 4–5. Woodland Creek says it's the second. Pl.'s Mem. Opp'n at 3–4.

4

AmGUARD's position on this question is not persuasive. It relies on a single case: *N. Nat'l Bank v. N. Star Mut. Ins. Co.*, Nos. A12-0182, A12-0214, 2012 WL 4052835 (Minn. Ct. App. Sept. 17, 2012). There, the Minnesota Court of Appeals determined that an insurer was required to pay actual-cash value in an amount determined as of the date of the loss. *Id.* at *3–5. The court reached this conclusion based on its construction of the at-issue policy. *Id.* at *3–4. Pointing to a policy term describing payment of "the actual cash value of the property *at the time of the loss*," the court reasoned:

> The only reasonable interpretation of the policy is that it requires the insurer to pay actual cash value, calculated pursuant to the Actual Cash Value terms . . . until actual repair or replacement takes place. Reading the policy in this fashion necessitates concluding that actual cash value is calculated *at the time of the loss*.

*Id.* at *4 (emphasis added). Here, unlike the policy at issue in *Northern National Bank*, the AmGUARD policy has no provision tying replacement-cost value or its calculation to the time of the loss.

It is true that the court in *Northern National Bank* didn't stop with its policy interpretation. Though not necessary to its holding, the court found support for its policy interpretation in "long-standing case law" in Minnesota "establish[ing] that the term 'actual cash value' means the 'actual market value at the time of destruction.'" *Id.* at *4 (quoting *Brooks Realty, Inc. v. Aetna Ins. Co.*, 149 N.W.2d 494, 500 (Minn. 1967)). AmGUARD cites no "long-standing case law" in Minnesota or another jurisdiction applying the same rule to the term "replacement-cost value."

5

It also is true that the *Northern National Bank* court found support in "public policy," explaining:

> In determining the actual cash value, payable before repair or replacement, it would make no sense to make the parties bear the risk and uncertainty of an increased or decreased recovery based on the date of a hypothetical future appraisal hearing that may never come to pass. Such an arrangement would invite abuse, as one side would often have an incentive to delay proceedings to increase its recovery or reduce its liability.

*Id.* at *5. AmGUARD suggests that these actual-cash value policy considerations apply equally to replacement-cost value, but that seems incorrect. *Northern National Bank* plainly limits its policy discussion to actual-cash value. In other words, nothing about that discussion suggests the court intended it to apply more broadly or to replacement-cost value specifically. AmGUARD cites no case doing that. Also, though the Parties do not cite, and independent research has not identified, a case answering this policy-based argument under Minnesota law, at least one influential treatise author has:

> The root concept of "replacement cost" is not, upon close examination, necessarily self-defining. Accordingly, the courts have faced various contentions as to what the concept means in practical measure terms and have determined that it does not mean historical cost, but the cost needed to put the insured in the position which the insured would have occupied had the loss not occurred. This almost necessarily requires that the date of loss not serve as the measurement date, as the necessary information may well not be available until the date of replacement, leaving the insurer to bear any increases due to rising construction costs.

12A *Couch on Insurance* § 176:58 (3d ed. Dec. 2021 Update) (footnotes omitted). *Couch*, widely cited in the Minnesota appellate courts,[3] is persuasive here.

There are two other reasons to reject AmGUARD's policy-based argument. The first is practical. AmGUARD's primary concern seems to be that insureds may try to take advantage of delay with the hope that replacement-cost value will increase. If AmGUARD's inflation assumption is correct—and it seems like it would be most of the time—it's still difficult to see what an insured actually might gain by doing that. Unlike actual-cost-value payments, insureds aren't usually supposed to pocket replacement-cost-value payments. By ordinary definition, payments for replacement-cost value aren't made until repairs are completed. *See Sela*, 455 F. Supp. 3d at 844. That's true here. *See* Policy [ECF No. 42-2 at 2]. In other words, though delays may end up requiring a property insurer to pay more, that doesn't mean the insured sees a financial benefit or windfall.

The second reason is case-specific: AmGUARD's policy includes a clause that guards against this type of delay. The clause says essentially that AmGUARD "will [] pay on a replacement cost basis for any loss or damage" only if "the repairs or replacement are made as soon as reasonably possible after the loss or damage." *Id.* at 2–3. A hypothetical insured who delays an appraisal or other proceedings with the hope of increasing the replacement-cost value would risk breaching this provision and losing out on any replacement-cost-value award. There may be cases in which it might make sense to accept

---

[3] A Westlaw search, albeit non-exhaustive and somewhat inexact, identified 146 Minnesota cases citing the treatise. *E.g.*, *Com. Bank v. W. Bend Mut. Ins. Co.*, 870 N.W.2d 770, 774, 775 (Minn. 2015).

AmGUARD's argument, but the presence of this policy provision means that this isn't one of them.[4]

For all these reasons, then, summary judgment will be entered for Woodland Creek on this question. To the extent repairs are completed, the replacement-cost value of Woodland Creek's loss will be determined based on the cost of those repairs as determined by the appraisal panel. To the extent repairs are not completed, the replacement-cost value of Woodland Creek's loss will be determined based on the 2021 pricing data the appraisal applied to determine this aspect of its award.

B

The next question is whether, under Minn. Stat. § 549.09, Woodland Creek is entitled to pre-award interest on amounts AmGUARD paid before the appraisal.[5] AmGUARD says no. Woodland Creek says yes.

In *Creekview of Hugo Association, Inc. v. Owners Ins. Co.*, I concluded that Minn. Stat. § 549.09 requires an insurer's pre-appraisal payments to an insured to be excluded

---

[4] Woodland Creek argues: "In asking this Court to determine that the repair cost is less than what was determined by the appraisal panel, AmGUARD is effectively asking this Court to set aside the panel's decision[.]" Pl.'s Mem. Opp'n at 9. This argument seems premised on the idea that the appraisal panel indisputably would have issued a replacement-cost-value award based only on 2021 pricing and included a replacement-cost-value award based on 2019 pricing as an alternative only because AmGUARD insisted on that. It is not clear that the appraisal panel would have had the authority to make that call. *See Quade v. Secura Ins.*, 814 N.W.2d 703 (Minn. 2012). Regardless, the record does not show that this account of the appraisal panel's award is beyond dispute. This argument cannot therefore justify the entry of summary judgment in Woodland Creek's favor on this issue.

[5] Woodland Creek agrees that it is not entitled to pre-award interest on the $607,200 deductible. Pl.'s Mem. Supp. [ECF No. 49] at 6; Pl.'s Mem. Opp'n at 13.

from the pre-award interest calculation. 386 F. Supp. 3d at 1071–72. AmGUARD, relying primarily on public-policy considerations discussed in the case, argues that the same rule should be applied here. Def.'s Mem. Supp. at 6–8. Woodland Creek responds in kind, arguing that the public-policy considerations on which AmGUARD relies cannot trump § 549.09's plain text. Pl.'s Mem. Opp'n at 10–16. The statute's text, Woodland Creek argues, unambiguously requires pre-award interest on the total appraisal award. *Id.* Woodland Creek says that *Creekview* was mistaken, and that its error should not be repeated here. *Id.* at 14–15.

Contrary to the Parties' characterization of it, *Creekview*'s starting point was an interpretation of the plain text of § 549.09:

> By statute, pre-award interest is owed only on pecuniary damages. Minn. Stat. § 549.09, subd. 1(b). As [*Housing & Redevelopment, Authority of Redwood Falls v. Housing Authority Property Insurance*] explained, pecuniary damages—that is, "compensation for loss that is 'estimated and monetarily compensated'"—are reduced by the payments the insurer made to its insured before Minn. Stat. § 549.09 is triggered. [No. 14-cv-4741 (PAM/HB)], 2017 WL 5197135, at *4 [(D. Minn. Nov. 8, 2017)] (quoting Black's Law Dictionary 471, 474 (10th ed. 2014)).

386 F. Supp. 3d at 1071–72. In other words, § 549.09, subd. 1(b)'s explicit textual directive that interest be "on pecuniary damages," considered in light of that term's legal meaning and the rule that pecuniary damages do not include an insurer's pre-appraisal payments, leads to the conclusion that pre-award interest is not awarded on such payments. Only after reaching this text-based conclusion did *Creekview* observe that this understanding found support in "the purposes of the pre-award-interest statute[]" and a close reading of *Poehler*

9

*v. Cincinnati Ins. Co.*, 899 N.W.2d 135 (Minn. 2017).  *Creekview of Hugo Ass'n, Inc.*, 386 F. Supp. 3d at 1072.

To this supporting group of non-textual reasons, add one observation.  Construing § 549.09 to require pre-appraisal interest on awards without excluding an insurer's pre-appraisal payments once made would create a risk of abuse and very likely yield absurd results.  Consider a hypothetical.  Say an insured files a $1 million claim with its property insurer.  Based on its loss estimate, the property insurer promptly pays the insured $990,000.  The insured accepts the payment and opts to take the dispute over the $10,000 difference to an appraisal panel.  Eighteen months after the loss, the panel issues a gross award of $1 million.  In Woodland Creek's view, pre-appraisal interest would be due on the entire $1 million award.  The point seems clear enough.  It's not just that, in light of the insurer's previous payment, awarding pre-appraisal interest on the $1 million gross award would conflict with the concept of "pecuniary damages."  The result would give insureds seemingly decisive power to obtain significant windfalls.  If there is a line to be drawn between this hypothetical and this case, or perhaps a limiting principle, it hasn't been identified.

AmGUARD argues that "since the pre-appraisal payment exceeds the [actual cash value] amount of the award, the remaining amount on which pre-award interest is calculated is $0." Def.'s Mem. Supp. at 7.  According to AmGUARD, "[w]here an insurer has paid in excess of the ACV of the appraisal award before it is issued . . . no pre-award interest should be due." *Id.* at 6–7.

This argument is not persuasive because it overlooks that some interest accrued. The Parties seem to agree that the start date for accrual of pre-award interest is August 6, 2019, when Woodland Creek notified AmGUARD of the loss. *See* Pl.'s Reply [ECF No. 56] at 1–2. AmGUARD didn't issue its first partial payment of $1,132,200 until November 14, 2019. Def.'s Mem. Supp. at 2 & n.1; Lindell Decl. Ex. 4 [ECF No. 50 at 29]. It issued its second payment of $1,792,000 on March 23, 2020. *Id.* In other words, interest would have accrued on the full amount of the award until the first payment, and interest would have continued to accrue on the award amount less $1,132,200 until March 23, 2020, when the $1,792,000 payment was made. *See Creekview*, 386 F. Supp. 3d at 1071 n.6 ("[T]he partial payment can reduce Owners' pre-award interest obligation once it was made to Creekview. But between June 19, 2017, when Creekview's written notice of its claim triggered pre-award interest, and August 29, 2017, when Owners made its initial payment, interest accrued on the full amount ultimately awarded at appraisal."). It may be that the gap between what AmGUARD has already paid and the appraisal panel's actual-cost-value award is large enough to include any interest AmGUARD might owe on this aspect of the award, but the record does not address this issue. Without more particular information and the Parties' input, it seems wiser to deny this aspect of AmGUARD's motion without prejudice. If the Parties are not able to reach agreement on this issue, it may be addressed later on an appropriate record.

C

AmGUARD advances two alternative arguments regarding Woodland Creek's entitlement to pre-appraisal interest on the replacement-cost-value component of the

panel's award. It argues first that "Woodland Creek should not receive pre-award interest on the replacement cost of the award where it is not yet entitled to the replacement cost portion of the award itself under the conditions of the applicable insurance policy." Def.'s Mem. Supp. at 8. In other words, AmGUARD says that the pre-award interest clock should not start until Woodland Creek is actually entitled to receive payment for replacement-cost value. Under the policy, that occurs after Woodland Creek "actually repair[s] or replace[s]" damaged property. Policy [ECF No. 42-2 at 2]. Alternatively, AmGUARD argues that it is not obligated to pay pre-award interest on replacement-cost value because Woodland Creek has not "actually repaired or replaced" damaged property that is the subject of the panel's award. Def.'s Mem. Supp. at 12–13.

The law is clear that the trigger starting the pre-award-interest clock here was Woodland Creek giving "written notice of claim," Minn. Stat. § 549.09, subd. 1(b), and that occurred on August 6, 2019, Lindell Decl. Ex. 3 [ECF No. 50 at 28]. The trigger is not, as AmGUARD contends, Woodland Creek completing repairs. As *Creekview* explains:

> [E]ven if [all repairs awarded by the appraisal panel had not been completed], the Minnesota Supreme Court made clear in *Poehler* that a contract provision governing when payment on a claim is due does not limit the availability of pre-award interest. Even though *Poehler* dealt with a different iteration of a loss-payment provision—one that provided that the insurer need not pay any portion of the loss until five days after the appraisal award, rather than, as here, that the insured need not pay on the replacement cost value until after repairs are completed—the Minnesota Supreme Court held explicitly that the loss-payment provision (like the one here) "governs only when a covered loss is payable; it does not speak to when interest begins to accrue, which can be months or even years

12

> before the payment is due." And *Poehler* made clear that, absent contractual language explicitly limiting pre-award interest on appraisal awards, a general loss-payment provision has no bearing on the pre-award-interest calculation.

386 F. Supp. 3d at 1071 (citations and footnote omitted); *see also Sela*, 455 F. Supp. 3d at 870 ("The Court finds that, under *Poehler*, interest began to accrue on both the ACV and RCV awards on July 8, 2015, when Selective received written notice of Sela's claim. The fact that the terms of Sela's insurance policy do not provide for payment of the full RCV award until Sela completes repairs is not relevant to when interest began to accrue on the RCV award.").[6]

AmGUARD is correct, however, that pre-award interest on the panel's replacement-cost-value award is not yet due. As noted, the policy says that AmGUARD "will not pay on a replacement cost basis for any loss or damage . . . [u]ntil the lost or damaged property is actually repaired or replaced." Policy [ECF No. 42-2 at 2]. Here, Woodland Creek does not seem to suggest—and the record does not show—that damaged property within the

---

[6] AmGUARD suggests that this question—whether pre-award-interest accrues from an insured's provision of written notice, as *Creekview* concluded, or from completion of repairs, as AmGUARD argues—be certified to the Minnesota Supreme Court pursuant to Minn. Stat. § 480.065, subd. 3. Def.'s Mem. Supp. at 11, 14. "Absent a close question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to determine all issues before it." *Smith v. SEECO, Inc.*, 922 F.3d 406, 412 (8th Cir. 2019) (quoting *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake*, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985)). "The most important consideration guiding the exercise of this discretion . . . is whether the reviewing court finds itself genuinely uncertain about a question of state law . . . ." *Johnson v. John Deere Co.*, 935 F.2d 151, 153–54 (8th Cir. 1991) (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)). As might be inferred from the discussion in *Creekview*, I conclude that state sources (particularly *Poehler*) leave little room for uncertainty regarding this question, and I conclude that certification would be inappropriate.

13

panel's replacement-cost-value award has been "actually repaired or replaced."[7]  Judge Schiltz addressed essentially this same situation in *Sela*:

> [T]he Court concludes that Sela may be entitled to interest on the RCV award, and if he becomes so entitled, the interest on the RCV award started accruing on July 8, 2015.  But the Court does not believe that Sela is presently entitled to recover interest on the RCV award.  In both *Poehler* and *Creekview*, the insured did not have to do anything more to be entitled to payment of the full appraisal award.  Because the insured in each of those cases was entitled to payment of the award, the insured was also entitled to payment of interest on the award.  Here, Sela is entitled to payment of his ACV award, but not his RCV award.  It does not make sense to make Selective pay interest today on an award that Sela may never be entitled to collect.  If Sela never becomes entitled to the holdback, he will never become entitled to be paid interest on the holdback.

455 F. Supp. 3d at 870.  This reasoning is persuasive here.  Woodland Creek will become entitled to interest on the replacement-cost-value component of the panel's award if and when it becomes entitled to payment of that award.

AmGUARD's motion will therefore be denied to the extent it seeks a declaration that the trigger starting the pre-award-interest clock is Woodland Creek completing repairs.  The trigger date was Woodland Creek's giving notice.  AmGUARD's motion will be granted to the extent it seeks a declaration that Woodland Creek is not entitled to pre-award interest on the replacement-cost-value component of the award at this time because, as far as the record seems to show, the damaged property subject to this aspect of the award has

---

[7]  As far as the record shows, the only repairs that have been completed are roofing repairs that AmGUARD says were completed in 2019 and paid for by 2020, at a cost below the panel's actual-cash-value award.  *See* Def.'s Mem. Supp. at 3, 8 & n.2; *see also* Suppl. Kuipers Decl. Ex. A [ECF No. 42-1 at 5] (roofing total of $1,164,531).

14

not been repaired or replaced. This latter determination means that Woodland Creek's motion must be denied to the extent it seeks an order requiring the payment of pre-award interest on the replacement-cost-value component of the award.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant AmGUARD Insurance Company's Motion for Partial Summary Judgment [ECF No. 39] is **GRANTED IN PART** as follows: Woodland Creek is not entitled to pre-award interest on amounts AmGUARD paid before the appraisal from the date of payment, and Woodland Creek may recover pre-award interest on the appraisal panel's replacement-cost-value award only after Woodland Creek has completed repairs included within that award. AmGUARD's motion is **DENIED** in all other respects.

2. Plaintiff Woodland Creek Manor Homes Association, Inc.'s Motion for Partial Summary Judgment [ECF No. 47] is **GRANTED IN PART** as follows: the replacement-cost value of Woodland Creek's loss shall be measured either when repairs were made or at appraisal (and not when the loss occurred), and pre-award-interest shall accrue from August 6, 2019, when Woodland Creek gave written notice of a claim. Woodland Creek's motion is **DENIED** in all other respects.

Dated: February 25, 2022                    s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court